IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>    Plaintiff, )<br>)<br>    vs. )<br>)<br>CONRAD VASQUEZ SALAZAR, )<br>and CLIFFORD RAYMOND SALAS, )<br>)<br>    Defendants. ) | NO. CR 12-CR-3183 RB |

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court *sua sponte*. In light of the Defendant's actions since the Court granted his motion to proceed *pro se*, the Court finds it necessary to revisit its prior ruling on the subject. (Doc. 168). After careful consideration of the underlying circumstances and relevant law, the Court hereby reverses its prior ruling, terminates Defendant's self-representation, and orders Leon Schydlower to resume his duties as Defendant's counsel.

## Background

On June 19, 2013, a grand jury issued a superseding indictment against Defendant Conrad Salazar. (Doc. 168). An attorney from the Federal Public Defender's office was appointed to represent the Defendant. On September 5, 2013, after Defendant expressed disagreement with his counsel, the Court appointed new counsel for the Defendant. (Doc. 111). Months later, still dissatisfied with his representation, the Defendant sought to proceed *pro se*. (Doc. 144). On March 24, 2014, the Court inquired into the Defendant's reasons for proceeding *pro se*, (Doc. 149), and found that the Defendant's request was made knowingly, voluntarily, and intelligently. In accordance with *Faretta v. California*, 422 U.S. 806 (1975), the Court granted

Defendant's request to represent himself and appointed standby counsel. (Doc. 168).

On April 24, 2014, the Court held a hearing on various pending motions. Included among these motions were various requests from the Defendant to increase his access to the court. (*See* Docs. 166, 170, 178). During the hearing, the Court held Defendant in direct criminal contempt for a prolonged, profane outburst directed at the Court and sentenced him to a term of incarceration of six months. (Doc. 189).

### Legal Standard

A criminal defendant has a constitutional and statutory right to waive counsel and represent himself. *Faretta*, 422 U.S. at 834-36. This right includes the right to control one's own defense, "to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." *McKaskle v. Wiggins*, 465 U.S. 1, 173 (1984). There are four requirements to properly invoke the right:

> First, the defendant must clearly and unequivocally inform the district court of his intention to represent himself. Second, the request must be timely and not for the purpose of delay. Third, the court must conduct a comprehensive formal inquiry to ensure that the defendant's waiver of the right to counsel is knowingly and intelligently made. Finally, the defendant must be able and willing to abide by rules of procedure and courtroom protocol.

*United States v. Tucker*, 451 F.3d 1176, 1180 (10th Cir. 2006) (internal quotations and citations omitted).

Yet, the right to self-representation is not absolute. "[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta* 422 U.S. at 835 n. 46. This "waiver or a termination of the right to self-representation may occur without the defendant's knowledge or consent." *Munkus v. Furlong*, 170 F.3d 980 (1999).

**Discussion**

While the Court will not divine Defendant's true intentions, it is clear that the Defendant has acted in an unacceptable manner and used his *pro se* status to delay and obstruct the administration of justice. The Defendant has exploded in a fit of anger in the courtroom, and acknowledges he has a tendency towards such behavior. He has abused the judicial process by showing an unwillingness to abide by the Court's orders and flouting the privileges the Court has afforded him. This behavior is unacceptable. Therefore, to avoid a mockery of this process, the Court finds it necessary to terminate Defendant's self-representation.

I.      **The Defendant's Conduct Has Been Unacceptable**

The Court described the Defendant's conduct at the April 24, 2014 hearing in detail in its order holding the Defendant in direct criminal contempt. (*See* Doc. 189). In short, the Defendant lost his temper and entered into a prolonged, profane tirade directed at the Court. Based on this and other related conduct, the Court determines that the Defendant has forfeited his right to represent himself.

*Illinois v. Allen*, which deals with the Sixth Amendment right to be present at trial, is instructive. 397 U.S. 337 (1970). In *Allen*, the Court held that a "defendant can lose his right to be present at trial if, after he has been warned by the judge . . . he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. *Id*. at 343; *see also United States v. Brock*, 159 F.3d 1077 (7th Cir. 1998) (extending the rationale of *Allen* to the right of self-representation). The *Allen* Court further concluded that "[t]rial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." *Id.* at 343.

Using *Allen* as a guide, the Seventh Circuit has twice affirmed district courts which revoked defendants' *pro se* status under similar circumstances. In *United States v. Brown*, the defendant requested access to I.R.S. files on all grand and petit jurors involved in his case and on the district court judge. 791 F.2d 577 (7th Cir. 1986). When the court ruled that the defendant was not entitled to the files, the defendant refused to proceed. *Id.* at 578. The defendant remained adamant even after the judge explained the law at length. *Id.* The judge ultimately cited the defendant for contempt. In reviewing the contempt order, the Seventh Circuit noted that "[a] court faced with a defendant's refusal to proceed . . . may . . . rescind the defendant's permission to proceed as his own counsel." *Id.* Notably, the *Brown* court held that the defendant had forfeited his right to represent himself. *Id.* at 579.

The Seventh Circuit affirmed its ruling in *Brown* about a decade later in *United States v. Brock*. 159 F.3d at 1079-80. In *Brock*, the defendant also expressed dissatisfaction with the judge's rulings and explanations by refusing to proceed. At a hearing on the defendant's *pro se* status, the defendant "refused to answer the [c]ourt's questions or to cooperate in any way with the proceedings." *Id.* at 1080 (internal citations omitted). After repeating demands for a bill of particulars and making repeated challenges to the court's authority, the defendant stormed out of the courtroom and was cited for contempt. The defendant continued to make these demands and refused to proceed despite another contempt citation. The court revoked his *pro se* status and the Seventh Circuit affirmed. *Id.*

This case is analogous to *Brown* and *Brock*. Here, the Defendant sought to delay proceedings until the Court granted his motions for court access. At a hearing on March 17, 2014, the Court granted Defendant's request for six daytime hours of library access a day and rescheduled its hearing. On April 24, 2014, the Defendant again refused to proceed because the

4

Court did not grant his additional requests for court access prior to the hearing.[1] When the Court ultimately denied several of his motions at the hearing, the Defendant erupted in a profane outburst. Like both *Brown* and *Brock*, the Court held Defendant in contempt for his behavior. Moreover, like *Brown* and *Brock,* the Court determines the Defendant's outburst and refusal to accept the Court's rulings warrant the revocation of his *pro se* status.

Admittedly, at this point, the Defendant's misconduct has only occurred in a pretrial setting. But the Court fears that the Defendant will disrupt the proceedings at trial. *See United States v. Flewitt*, 874 F.2d 669, 674 (9th Cir. 1989) ("[p]retrial activity is relevant only if it affords a strong indication that the defendants will disrupt the proceedings in the courtroom.") While the Defendant has written a formal letter of apology to the Court stating that he will do his best to avoid similar outbursts, this promise rings hollow. The motions the Defendant filed after the Court's finding of contempt repeat the same arguments about court access and discovery that the court has already addressed. He continues to accuse the Court and Government of misconduct without any basis in fact. Moreover, in these motions, Defendant professes that he has a tendency towards angry outbursts. (*See* Docs. 190, 196). In fact, the Defendant claims to have been diagnosed with "(explosive) intermittent explosive mood disorder, anti-socialism, anxiety, depression, and PTSD." (Doc. 196 at 2). He claims that he has stopped taking medication for his mental issues and has found it very difficult to control his temper. (*Id.* at 3).

Based on these findings, the Court is unwilling to proceed in the current manner. The Court will not subject a jury to Defendant's verbal abuse. Nor will it ignore the security threat that the Defendant may pose. Both of these concerns will be significantly exacerbated if the Defendant represents himself at trial.

---

[1] The Court proceeded with its hearing on the Defendant's motion to suppress despite the Defendant's initial refusal to participate without the Court first deciding favorably on all of his court access motions.

**II.     The Defendant Has Abused the Judicial Process**

On a related point, the Court also notes that, in addition to the Defendant's contemptuous behavior, the Defendant has also used his *pro se* status to frustrate the administration of justice. This is also unacceptable.

The Tenth Circuit has stated: "A court should, of course, vigilantly protect a defendant's constitutional rights, but it was never intended that any of these rights be used as a ploy to frustrate the orderly procedures of a court in the administration of justice." *United States v. Nunez*, 877 F.2d 1475, 1478 (10th Cir. 1989) (citing *United States v. Lawrence*, 605 F.2d 1321, 1325 (4th Cir. 1979) *cert. denied*, 444 U.S. 1084 (1980)). Hence, "[w]hen faced with a situation of potential abuse, the [Court] may properly impose restraints on the right to reject counsel to prevent the right from being manipulated so as to obstruct the orderly procedure of the courts." *United States v. Padilla,* 819 F.2d 952, 959 (10th Cir. 1987); *see also United States v. Akers*, 215 F.3d 1089, 1097 (10th Cir. 2000).

Here, as detailed above, the Defendant has used his *pro se* status not as a tool for justice but as a means to delay trial and alleviate the burdens of incarceration. The Court will offer some examples. First, once the Defendant gained *pro se* status, Defendant sought to delay the trial by more than a year.[2] This is after the Defendant has already fired two attorneys for not doing his exact bidding. Second, the Defendant has filed numerous motions seeking to have this Court intervene with the U.S. Marshals Service to remove any restrictions in preparing his defense and to provide him with the full panoply of benefits afforded to public defenders. He accuses the Court of bias for rejecting these motions, even though he has been informed that the Constitution does not afford him such privileges. Third, notwithstanding having chosen to represent himself,

---

[2] Conveniently for the Defendant, his outburst and the Court's finding of contempt bought him significantly more time to prepare for trial.

6

the Defendant has continuously criticized his standby counsel for not offering him enough assistance. In fact, he has gone so far as to file a motion to compel against his own standby attorney. (See Docs. 191, 198). Defendant continues this behavior in spite of the Court's admonishments that it would not allow hybrid representation. And, fourth, Defendant has continued, in direct conflict with the Court's verbal order, espousing conspiracy theories, the most prevalent of which involves a completely unsubstantiated relationship between a former Deputy U.S. Marshal's alleged cousin and Defendant's ex-fiancée.[3]

### III. Conclusion

In sum, the Defendant has abused the right of self-representation. He has shown he is unwilling to abide by rules of procedure and courtroom protocol. He has flouted the Court's rules and disrespected the Court and its proceedings. He has done everything within his power to manipulate this process to his own personal – not legal – benefit. The Court has a duty to ensure the dignity of the judicial process, while still respecting the Defendant's right to a fair trial. Revoking the Defendant's *pro se* status is the only way to accomplish this goal.

**THEREFORE,**

**IT IS ORDERED** that Defendant's *pro se* status is revoked. Leon Shydlower, Defendant's standby counsel, shall resume his duties as Defendant's counsel.

**IT IS FURTHER ORDERED** that all pending motions filed by the Defendant in his *pro se* capacity are denied without prejudice. (Docs. 191, 192, 196, 197, 198, 200, 201).

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE

---

[3] There is no familial relationship between the former Deputy U.S. Marshal and the "cousin," who happens to share the deputies' last name. (Doc. 184-1).