IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,      )
                                   )
          Plaintiff,      )
                                   )
     vs.            )             NO. CR 12-3183 RB
                                   )
CONRAD VASQUEZ SALAZAR,     )
and CLIFFORD RAYMOND SALAS,  )
                                 )
          Defendants.     )

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER DENYING MOTION TO SUPPRESS**

On September 25, 2012, law enforcement prepared to execute a search warrant on the home of Defendant Conrad Vasquez Salazar. Prior to commencing the search, Defendant Salazar left his home on a motorcycle. Arrest warrant in hand, law enforcement arrested Defendant Salazar approximately a quarter-mile from his home. On Defendant's person were two cell phones. Law enforcement subsequently searched all of the data from the cell phones.

Before the Court is Defendant's motion to suppress the evidence found on those cell phones, filed on July 17, 2013. (Doc. 91) The Court held an evidentiary hearing on April 24, 2014. As this case involved an unresolved area of Fourth Amendment law pending resolution in the Supreme Court, the Court awaited the Supreme Court's disposition in *Riley v. California* before making its determination. 134 S.Ct. 2473 (June 25, 2014). [1]  Having carefully considered the submissions of counsel, including the supplemental briefing on the impact of *Riley* (Docs. 222, 223), the evidence adduced at the April 24, 2014 hearing, and being otherwise fully advised, the Court **DENIES** Defendant's motion.

---

[1] The Supreme Court considered *Riley* together with *United States v. Wurie*, No. 13-212 (June 25, 2014).

## FINDINGS OF FACT

Federal Rule of Criminal Procedure 12(d) provides that when factual issues are involved in deciding a motion, the Court must state its essential findings on the record. The Court makes the following factual findings based on the evidence adduced at the evidentiary hearing, including the testimony of Special Agent Jack Marberger.

1. Jack Marberger is a special agent with the Federal Bureau of Investigation (FBI), working out of the Las Cruces office. He has held this position since July of 2011. (Tr. at 12:2-6).[2]

2. Agent Marberger has been involved as an assisting agent in an investigation that included Defendant Conrad Salazar. (Tr. at 12:7-15). In fact, he was the affiant for the relevant search warrant for the Defendant's home and assisted in the arrest operation. (Tr. at 12:16-25).

3. The relevant search warrant was issued on September, 25, 2012 by United States Magistrate Judge Stephan M. Vidmar. The warrant lists the subject premises as the "Residence of Conrad Salazar," located at 1014 Campo Street, Las Cruces, NM 88001. The warrant describes the residence in detail and includes pictures. (Search and Seizure Warrant, Gov. Ex. 1).

4. Included in the subject premises described in the warrant (Attachment A) is the following:

> [A]ll structures, outbuildings, vehicles, and appurtenances on the property within the curtilage of the residence, and particularly the following vehicles, utilized by Conrad Salazar and known to regularly be at the Subject Premises: . . .

---

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version taken on April 24, 2014. Any finalized transcripts may contain slightly different page and/or line numbers.

> c. Motorcycle which is believed to be parked in the back yard of Subject Premises bearing New Mexico License Plate of R872768.

(Gov. Ex. 1).

5.  Included in the items to be seized in the warrant (Attachment B) is the following:

> G. Cellular telephones and their contents, to include but not limited to: phone book or contacts list, call history, text messaging, audio/video files, photographs, and any other materials stored on the telephones that is related to the above listed offenses.

(Gov. Ex. 1).

6.  On September 25, 2012, U.S. Magistrate Judge Stephan M. Vidmar also issued an arrest warrant for Conrad Salazar. (Tr. at 19:5-7; Gov. Ex. 1).

7.  On September 25, 2012, FBI Agents executed the search warrant and arrest warrant. (Tr. at 13:4-6).

8.  Prior to executing the warrants, the Defendant's residence was under surveillance by FBI agents and other task force officers. On the day the warrants were executed – but before the warrants were actually executed – Agent Marberger assisted with the surveillance of the subject premises. (Tr. at 13:8-16).

9.  Around midday, agents observed Defendant leaving his home on a motorcycle. A marked unit pulled Defendant over between a quarter-mile and half-mile away from his home and he was arrested without incident. Agent Marberger could still see the subject premises from where the Defendant was stopped. (Tr. at 13:20-23; 14:2-7).

10. The motorcycle Defendant was riding when he was stopped was listed on the search warrant as an item to be searched. (Tr. at 25:15-24; Gov. Ex. 1).

11. Defendant was under constant surveillance from the moment he left his house. Defendant did not make any stops prior to being arrested. (Tr. at 14:14-15:2).

12. Defendant was searched upon his arrest. During this search, agents found two cell phones and a wallet. (Tr. at 3-8).

13. Around 12:30 p.m., agents transported the Defendant and these items to the Las Cruces FBI office. After arriving at the office, Agent Marberger searched (or "dumped") Defendant's cell phones. He began his cell phone search at 1:08 p.m. and finished the search for both phones at 1:35 p.m. (Tr. at 15:21-25).

14. During the phone dump, Officer Marberger downloaded "basically everything" stored electronically on the cell phones. (Tr. 16:7-12).

15. As Agent Marberger dumped the cell phones, Defendant was being booked into custody. (Tr. at 16:20-17:3).

16. After the phone dump, Defendant was booked into the Dona Ana County Detention Center. Later that afternoon, the Defendant's cell phones and wallet were returned into the Defendants property at the detention center. (Tr. at 17:6-21).

17. Agent Marberger believed he had authority to search the phones both pursuant to the warrant and pursuant to his authority to search the Defendant incident to a lawful arrest. (Tr. at 30:2-10; 21-25).

## CONCLUSIONS OF LAW

The Government provides four separate legal justifications authorizing the search of Defendant's cell phones. Specifically, the Government contends: (1) it was a lawful search incident to arrest; (2) the warrant authorized the search; (3) the good-faith exception would apply even if the search was not authorized as a search incident to arrest; and (4) the inevitable discovery exception applies.

I.      **The Cell Phone Search was Not a Lawful Search Incident to Arrest**

The Government initially argued that, even in the absence of a warrant, the search of the Defendant's cell phones was a lawful search incident to arrest. At the time, the Tenth Circuit had not resolved this issue, but the issue was pending before the Supreme Court. For this reason, this Court waited for the Supreme Court to issue its decision in *Riley v. California*, 134 S.Ct. 2473. *Riley* answered the question of "whether the police may, without a warrant, search digital information on a cell phone seized from an individual who has been arrested." *Riley*, 134 S.Ct. at 2480.

To answer this question, the Supreme Court considered the history of the search incident to arrest exception to the Fourth Amendment's warrant requirement. *Chimel v. California* provided the framework for the existing search incident to arrest doctrine. 395 U.S. 752 (1969). Under *Chimel*, the Court found it reasonable for an arresting officer to search the person arrested to remove any hidden weapons and to prevent the suspect from destroying evidence. *See id.* at 763. However, the search was to be limited to the area within the suspect's immediate control. *See id. United States v. Robinson*, 414 U.S. 218 (1973) created a bright-line rule from *Chimel*. After *Robinson*, courts no longer needed to engage in a case by case analysis to determine whether a search incident to arrest was lawful. *See id.* 414 U.S. at 235. When a custodial arrest was made pursuant to probable cause, the search of the arrestee's person required no further justification. Most recently, *Arizona v. Gant* restated the concerns underlying *Chimel*, namely officer safety and evidence preservation, in holding that police may only search a vehicle incident to arrest "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." 556 U.S. 332, 343 (2009).

Applying the principles of these cases to cell phones, the Supreme Court weighed the strength of the government's interest in the search against the diminished, but still existent, expectation of privacy held by an arrestee. *Riley*, 134 S.Ct. at 2484-85 (citing *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). The Court came down heavily in favor of the arrestee's privacy interests. Cell phones, according to the Court, are unique: they store an immense amount of information, which was "nearly inconceivable" when *Chimel* and *Robinson* were decided. *See id.* Therefore, the Court held that the exception for searches incident to arrest does not include digital data stored on cell phones. As a matter of law, officers must obtain a warrant before searching the contents of an arrestee's electronic devices. *Id.*

As the dictate of *Riley* is abundantly clear, the Government no longer contends that the search of the Defendant's phones was a lawful search incident to arrest. Instead, the Government focuses on a key distinguishing factor: the existence of a warrant. The Court turns to this issue next.

## II. The Officers Exceeded the Scope of the Search Warrant

If the cell phones were found in the Defendant's home, the officers could have searched them pursuant to the warrant. Attachment A of the search warrant clearly provides the needed authority. (*See* Gov. Ex. 1). Yet, the cell phones were found on the Defendant's person more than a quarter-mile away from his home. Does the search of the cell phones still fall within the scope of the warrant? The Court determines the answer to this question is no.

"The Fourth Amendment's prohibition against unreasonable searches and seizures has always been interpreted to prevent a search that is not limited to the particularly described 'place to be searched, and the persons or things to be seized.'" *Florida v. Royer*, 460 U.S. 491, 499 (1983) (citing U.S. Const. amend. IV). Neutral, detached judicial officers decide the scope of a

warrant; the determination is not left to the discretion of the law enforcement officers who execute it. *Johnson v. United States*, 333 U.S. 10, 13-14 (1948). Indeed, searches or seizures which are not authorized by the judicial process are "*per se* unreasonable under the Fourth Amendment − subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).

Accordingly, in executing a warrant, law enforcement officers are limited to actions which are expressly authorized by the warrant or which are reasonably related to its purpose and are thus impliedly authorized by the warrant. *See Michigan v. Summers*, 452 U.S. 692, 705 (1981) (search warrant implicitly authorizes law enforcement officers to detain occupants of premises during search); *cf. United States v. Robertson*, 21 F.3d 1030, 1035 (10th Cir. 1994) (federal agents not justified in seizing evidence not covered by search warrant). Where law enforcement officers' actions grossly exceed the scope of a particularized warrant, they undermine the particularity requirement of the Fourth Amendment. *United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir. 1988). The scope of a warrant is determined using "a standard of practical accuracy rather than technical precision." *United States v. Angelos*, 433 F.3d 738, 745 (10th Cir. 2006) (quoting *United States v. Ortega-Jimenez*, 232 F.3d 1325, 1328 (10th Cir. 2000)). Such a "practical reading" of the warrant is permissible if a warrant's terms are disputed. *Id.* at 746.

In this case, there is no dispute that the warrant met the Fourth Amendment's particularity requirements. Further, the warrant, on its face, does not contain any constitutional defects or clerical defects, and there is no ambiguity in the terms used in the warrant. *Angelos*, 433 F.3d at 745. Rather, the question is whether the officers exceeded the scope of the warrant

by seizing and searching the Defendant's cell phones while he was away from his house. Based on the clear terms of the warrant, the officers overstepped their discretion.

The warrant authorizes the search of Defendant's residence at 1014 Campo Street, Las Cruces, NM 88001. (*See* Warrant Attachment A, Gov. Ex. 1). The warrant explicitly includes "all structures, outbuildings, vehicles, and appurtenances on the property within the curtilage of the residence." (*Id.*) Within this category of places to be searched the warrant specifically mentions the Defendant's "Motorcycle which is believed to be parked in the back yard of Subject Premises bearing New Mexico License Plate of R872768." (*Id.*)

Attachment B of the warrant allows for the seizure of all evidence related to certain crimes. Listed specifically among the items to be seized is:

> Cellular telephones and their content, to include but not limited to: phone book or contacts list, call history, text messaging, audio/video files, photographs, and any other material stored on the telephones that is related to the above listed offenses.

(*See* Warrant Attachment B, Gov. Ex. 1).

Pursuant to Attachment A of the search warrant, officers could lawfully search everything within "the curtilage of the [1014 Campo Street]." (Gov. Ex. 1). The word curtilage severely and purposefully limits the scope of the warrant. Black's Law Dictionary defines curtilage as "The land or yard adjoining a house, usually within an enclosure. Under the Fourth Amendment, the curtilage is an area usually protected from warrantless searches." Black's Law Dictionary (9th ed. 2009).

The warrant requires that the items listed to be seized in Attachment B of the warrant be found within the curtilage of the Defendant's residence. Any other reading would require divorcing Attachment A from Attachment B. The warrant is a single, incorporated document.

Further, Agent Marberger's affidavit in support of the warrant only supports a limited search. Specifically, he states:

> Affiant asserts that there is probable cause to believe that Conrad Salazar is in possession of the items listed in Attachment B, attached and incorporated herein, which are evidence, fruits and instrumentalities of violations of 18 U.S.C. §§ 992(g), 21 U.S.C. §§ 841(a)(1) and §§ 846 and that this evidence is being stored at the Subject Premises and the surrounding curtilage and outbuildings, and in Salazar's [sic].[3]

(Gov. Ex. 1). Thus, reading the warrant as a whole, the warrant did not authorize the search of any space outside of the curtilage of Defendant's residence.

This limited reading of the warrant is supported by the Tenth Circuit's decision in *United States v. Young*, 263 Fed.Appx. 710 (2008) (unpublished). In *Young*, the warrant was based on an affidavit providing probable cause to search the defendant's home and her person. *Id.* at 712. However, the command line of the warrant stated only that "YOU ARE THEREFORE COMMANDED . . . to make a search of the above-named premises." *Id.* An officer executed the warrant by stopping the defendant while she was driving, several miles from the apartment described in the warrant. Upon that search, the officer discovered 30 grams of methamphetamine. *Id.* at 712. Reading the warrant in its entirety, the *Young* Court held that the search of the defendant's person was beyond the scope of the warrant. In support, the court pointed to the use of the word "premises" in the warrant, which is generally a reference to real property. Also, the court noted that the affidavit only provided sparse facts to support a search of the defendant. *Id.* at 714.

While this case is distinguishable in some respects – Defendant Salazar was stopped much closer to his home – the result should be the same as *Young*. Here, the warrant only mentions the "subject premises," which is defined exclusively in terms of property. Further, the

---

[3] The affidavit omits the word following "Salazar's."

warrant makes no mention of a search of the Defendant's person and the affidavit in support of the warrant provides no basis for probable cause to search the Defendant's person.[4]

In short, the warrant particularly described the place to be searched – the Defendant's home and the curtilage surrounding it. There is no language in the warrant that extends the parameters of the warrant beyond that point. Accordingly, when officers searched and seized the Defendant's cell phones more than a quarter-mile away from his home, they acted outside the scope of the warrant.

## III.   Application of the Exclusionary Rule is not Warranted

Having found the search of Defendant's phones violated the Fourth Amendment, the question of a remedy remains. Generally, when a court finds that a defendant's Fourth Amendment rights were violated, the remedy in the context of a criminal prosecution is the exclusion of the unlawfully seized evidence from the government's case-in-chief. *See United States v. Herrera*, 444 F.3d 1238, 1248 (10th Cir. 2006) (citations omitted).

However, application of the exclusionary rule is not automatic. *See Davis v. United States*, 131 S.Ct. 2419, 2423 (2011). "The question whether the exclusionary rule's remedy is appropriate in a particular context has long been regarded as an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." *Arizona v. Evans*, 514 U.S. 1, 12 (1995). Suppression is "not a personal constitutional right," nor seen as "redress" for the constitutional wrong done. *Davis*, 131 S.Ct. at 2426 (quoting *Stone v. Powell*, 428 U.S. 465, 486 (1976)). The focus is deterrence, namely, preventing future Fourth Amendment violations.

---

[4] The Government points to no language in the warrant that could arguably have been read to extend the scope of the warrant to include a point a quarter-mile from the Defendant's home or the Defendant's person.

Accordingly, various principles have been established to limit the application of the exclusionary rule. One such principle is the good-faith exception. *See United States v. McCane*, 573 F.3d 1037, 1042 (10th Cir. 2009). Under the good-faith exception, the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *United States v. Leon*, 486 U.S. 897, 919 (1984).

Since the Court decided *Leon*, the Supreme Court has had several opportunities to examine the scope of the exclusionary rule and the good-faith exception. Both the Government and the Defendant focus their arguments on the Supreme Court's most recent decision concerning the exclusionary rule, *Davis v. United States*. In *Davis*, the Supreme Court fashioned a bright-line rule when the good-faith exception is to be applied. The Supreme Court held that "when binding appellate precedent specifically authorizes a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities." *Id.* According to the Court, "[a]n officer who conducts a search in reliance on binding appellate precedent does no more than 'ac[t] as a reasonable officer would and should act under the circumstances.'" *Id.* (citing *Leon*, 486 U.S. at 920).

Defendant argues that the *Davis* exception is inapplicable because the Tenth Circuit had not issued a binding opinion resolving the issue of whether cell phones could be searched incident to arrest. This is true. Yet, pursuant to the Tenth Circuit's decision in *United States v. McCane*, the good-faith exception still applies. *See McCane*, 573 F.3d 1037.

*McCane* was decided before the opinion in *Davis* was issued, but is still good law. *See United States v. Madden*, 682 F.3d 920, 926 (10th Cir. 2012). In substance, *McCane* is similar to the case currently before the court. In *McCane*, an officer conducted a search incident to arrest of the defendant's vehicle while the defendant sat in the back of the police car. The district court

11

upheld the search. Under the Tenth Circuit's decision in *United States v. Humphrey*, 208 F.3d 1190 (10th Cir. 2000), the search was legal. However, prior to the circuit court's opinion, the Supreme Court in *Gant* concluded this type of search was unlawful. *See id.* (citing *Gant*, 556 U.S. 332). In light of *Gant*, the Tenth Circuit reversed the district court and held that the search violated the defendant's Fourth Amendment rights. The question of remedy remained.

After reviewing the relevant Supreme Court precedent applying the exclusionary rule, the Tenth Circuit determined that exclusion was inappropriate. Like *Davis*, the Tenth Circuit held "that it would be proper for this court to apply the good-faith exception to a search justified under the settled case law of *a United States Court of Appeals*, but later rendered unconstitutional by a Supreme Court decision." *Id.* at 1037 (emphasis added). The Tenth Court reasoned:

> Just as there is no misconduct on the part of a law enforcement officer who reasonably relies upon the mistake of a court employee in entering data, *Evans,* 514 U.S. at 15, or the mistake of a legislature in passing a statute later determined to be unconstitutional, *Illinois v. Krull,* 480 U.S. 340, 349-50 (1987), a police officer who undertakes a search in reasonable reliance upon the settled case law of a United States Court of Appeals, even though the search is later deemed invalid by Supreme Court decision, has not engaged in misconduct. The refrain in *Leon* and the succession of Supreme Court good-faith cases is that the exclusionary rule should not be applied to "objectively reasonable law enforcement activity." 486 U.S. at 919. Relying upon the settled case law of a United States Court of Appeals certainly qualifies as objectively reasonable law enforcement behavior.

*Id.* at 1044-45 (citations altered). It bears underscoring that the Tenth Circuit did not limit this exception to binding case law.

This case fits squarely within the rule enunciated in *McCane.* When the officers searched Defendant's cell phones, they had every reason to believe it was a lawful search incident to arrest.[5] In fact, they reasonably relied on the settled case law of a United States Court of Appeals.

At the time officers' executed their search of the cell phones there was unanimous support for their actions within the United States Courts of Appeals. *See United States v. Finley*, 477 F.3d 479 (5th Cir. 2007); *United States v. Ortiz*, 84 F.3d 977, 983-84 (7th Cir. 1996); *United States v. Murphy*, 552 F.3d 405, 411 (4th Cir. 2009). Also, the Tenth Circuit gave support to this position, albeit in an unpublished decision. *See Silvan v. Briggs*, 309 Fed.Appx. 216 (10th Cir. 2009).[6] The first appellate ruling outlawing this practice occurred after the search in question took place. *See United States v. Wurie*, 728 F.3d 1, 1 (1st Cir. 2013). Based on these cases, the officers had no reason to believe that their search was unlawful or that the law on cell phone searches was unsettled. Indeed, the officers would have had every reason to believe their actions were supported by law.

Accordingly, when the Court weighs the benefits of deterrence verses the costs of the exclusionary rule, the result is the same as *McCane* and *Davis*. There is simply no indication that the police exhibited a deliberate, reckless, or grossly negligent disregard for the Defendant's Fourth Amendment rights. "About all that exclusion would deter in this case is conscientious police work." *See Davis*, 131 S.Ct. at 2429. As the officers relied on settled case law of a United States Court of Appeals, the officers had good-faith basis to believe their actions were legal. Therefore, the good-faith exception to the exclusionary rule applies in this case.

---

[5] The Government does not argue and the Court does not consider whether the officers' acted reasonably in good-faith reliance on the warrant. Rather, the Government focuses its argument on whether the exception to the exclusionary rule enunciated in *Davis* applies in the current case.

[6] Further, several district courts within the Tenth Circuit ruled that a cell phone search incident to arrest was valid. *See United States v. Aispuro*, 20-13 WL 3820017 (D. Kan. July 24, 2013); *United States v. Mercado-Nava*, 486 F.Supp.2d 1271 (D. Kan. 2007); *United States v. Espinoza*, 2007 WL 1018893 (D. Kan., Apr. 3, 1997); *see also United States v. Rocha*, 2008 WL 4498950 (D. Kan. Oct. 2, 2008) (search of cell phone contents proper under automobile exception).

**IV.     The Inevitable Discovery Exception Applies**

Though the Court concludes that the good-faith exception applies, the Court further determines that the seized evidence would be admissible under the doctrine of inevitable discovery. "The inevitable discovery doctrine provides an exception to the exclusionary rule and permits evidence to be admitted if an independent, lawful police investigation inevitably would have discovered it." *United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005) (internal citation and punctuation omitted). To assist courts in determining whether the evidence would have been obtained lawfully, the Tenth Circuit has set forth the following factors:

> 1) the extent to which the warrant process has been completed at the time those seeking the warrant learn of the search; 2) the strength of the showing of probable cause at the time the search occurred; 3) whether a warrant ultimately was obtained, albeit after the illegal entry; and 4) evidence that law enforcement agents "jumped the gun" because they lacked confidence in their showing of probable cause and wanted to force the issue by creating a fait accompli.

*Id.* at 1203-04 (quoting *United States v. Souza*, 223 F.3d 1197, 1204 (10th Cir. 2000)). The burden rests on the government to prove "by a preponderance of the evidence that the evidence at issue would have been discovered without the Fourth Amendment violation." *Id.*

Considering the factors set forth in *Cunningham*, the Court concludes that the cell phones would ultimately have been searched pursuant to a warrant. At the time of the search of the cell phones, officers already had a warrant which clearly authorized the search of cell phones – but only if they had been found in the Defendant's residence. Given the circumstances, it is very unlikely that a judge would not issue a second warrant specifically authorizing the search of the cell phones found on Defendant's person. As the Government correctly notes, "there was already probable cause to search the phones; the only thing that had changed was the phones' location: Conrad Salazar's person instead of his house." (Doc. 103 at 11). As law enforcement already had

14

established probable cause to search the cell phones, they did not "jump the gun" by prematurely searching the cell phones.

In short, the information on the phones would have been found during the course of the investigation. The inevitable discovery exception to the exclusionary rule applies in this case.

**THEREFORE,**

**IT IS ORDERED** that Defendant Conrad Salazar's Motion to Suppress Evidence and Statements (Doc. 91) is **DENIED**.

**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**