# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                             CV 16-551 RB/WPL
                                                 CR 12-3183 RB

CONRAD VAZQUEZ SALAZAR,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Conrad Salazar filed a pro se amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (CV Doc. 3; CR Doc. 336.)[1] He cites three instances preceding his guilty plea and sentencing where he claims trial counsel's inaction constituted ineffective assistance. The United States filed a response. (Doc. 13.) Because his claims may be resolved on the record alone, I have not conducted an evidentiary hearing. I recommend the Court deny his motion.

### BACKGROUND

The Second Superseding Indictment charged Salazar with seven counts stemming from the firebombing of a tattoo shop, heroin distribution, and possessing a stolen handgun as a felon. (CR Doc. 67 at 1-4.) He pleaded not guilty. (CR Doc. 18 at 1.) The United States later offered him a plea agreement, which stipulated that he would plead guilty to Count 1—Conspiracy to Maliciously Damage or Destroy by Means of Fire and/or Explosive Device, in violation of 18 U.S.C. §§ 844(i) and 844(n)—and Count 7—Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1)—in exchange for a stipulated

---

[1] Documents filed in both cases are referenced by their docket number in the civil case.

sentence of 240 months imprisonment. (CR Doc. 315 at 2, 4.) The cover letter to the plea agreement noted the alternative path forward—should Salazar reject the plea offer, the United States would seek to supersede the indictment and charge him with possessing a destructive device in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(B)(ii), which carried a mandatory minimum sentence of thirty years imprisonment. (Doc. 13-1 at 1.) The cover letter also noted that Salazar's former co-defendant, Clifford Salas, proceeded to trial on this and other charges a few months prior and was found guilty. (*Id.*) Salazar accepted the plea agreement. (CR Doc. 315 at 8.)

The Presentence Report ("PSR") considered all seven counts of the Second Superseding Indictment to calculate a guidelines imprisonment range of 188 to 235 months if Salazar was convicted at trial. (*See* PSR at 31.) It did not provide advisory guideline ranges for the other two permutations under consideration—i.e., Counts 1 and 7 if he pleaded guilty, or the potential new superseding indictment referenced in the cover letter if he proceeded to trial. (*See* PSR at 1-36.)

The plea agreement suggests that Salazar pleaded guilty to being an armed career criminal (*see* CR Doc. 315 at 2, 4), but the PSR found otherwise. It did not classify him as an armed career criminal, and the imprisonment range did not include an enhancement under the armed career criminal guideline. (*See* PSR at 5 ("[T]he United States Probation Officer determined that defendant is not an armed career criminal"); *see also* PSR at 1-36 (nowhere mentioning U.S.S.G. § 4B1.2).)

On November 24, 2015, the Court accepted the plea agreement and sentenced Salazar to 240 months imprisonment. (CR Docs. 322 at 1; 358 at 23.) The Court noted that, for Counts 1 and 7, Salazar's offense level was 28, his criminal history category was VI, and his guideline imprisonment range was 140 to 175 months as to Count I and 120 months as to Count 7. (CR

Doc. 358 at 23; *see also* PSR at 11-13 (calculating the offense level for Counts 1 and 7 but not the criminal history category or guideline imprisonment range).) Judgment was entered the following day, on November 25, 2015. (CR Doc. 324.)

About seven months later, on June 13, 2016, Salazar timely filed his amended motion under § 2255 alleging ineffective assistance of counsel. *See* 28 U.S.C. § 2255(f)(1) ("A 1-year period of limitation shall . . . run from . . . the date on which the judgment of conviction becomes final.").

## DISCUSSION

To succeed on an ineffective assistance claim, a defendant must show (1) that his lawyer's performance was deficient, i.e., it fell below the level expected from a reasonably competent attorney in criminal cases, and (2) that he suffered prejudice, i.e., there is a reasonable probability that the result would have been different but for his lawyer's unprofessional errors. *United States v. Cruz*, 774 F.3d 1278, 1284-85 (10th Cir. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 696 (1984)). "To show prejudice (the second prong) in the context of a plea agreement, [the defendant must] convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Bonney v. Wilson*, 817 F.3d 703, 712 (10th Cir. 2016) (citing *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (internal quotation omitted)). "In other words, in order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *United States v. Weeks*, 653 F.3d 1188, 1201 (10th Cir. 2011) (quoting *Hill*). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.

In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

Because Salazar is pro se,[2] I construe his pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Liberal construction requires courts to make some allowance for a pro se litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110) (alterations omitted). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.*

Salazar's first claim relates to the sentence enhancements in the PSR under U.S.S.G. § 2K2.1 for Count 7—felon in possession of a stolen firearm. (*See* Doc. 3 at 4.) He argues that the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), invalidated the residual clause of U.S.S.G. § 2K2.1(a)(2), which in turn disqualified all of his prior felony convictions as crimes of violence under the guideline. (*Id.*) He believes defense counsel's ineffective assistance was failing to raise this argument, and the subsequent harm was that the PSR incorrectly calculated an additional five-year mandatory minimum term on his advisory guideline sentence, which inflated the agreed-upon term of imprisonment in his plea agreement. (*See id.*; *see also* Doc. 4 at 4-10.) He appears to argue that he would have proceeded to trial if the

---

[2] The CM/ECF dockets for the civil and criminal cases indicate that Salazar is represented by counsel, but his filings indicate otherwise: he signed his motion and supporting memorandum pro se, and listed counsel's name is absent. (*See* Doc. 3 at 12 (stating "N/A" on the line for "Signature of Attorney (if any)"; *see also* Doc. 4 at 1 (listing a prison in Tucson, Arizona as his "Mailing address pursuant to 28 C.F.R. § 540.18, et. seq.").)

4

PSR presented this lower sentencing range. (*See* Doc. 4 at 6 ("It is this incorrect Guideline Range which trial counsel used to advise his client to not withdraw his plea before sentencing.").)

Three recent Supreme Court cases are relevant. In 2015, in *Johnson*, the Court found unconstitutionally vague the so-called "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), which defined "violent felony" to include any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 135 S. Ct. at 2563. In 2016, in *Welch v. United States*, the Court held that "*Johnson* announced a substantive rule that has retroactive effect in cases on collateral review." 136 S. Ct. 1257, 1268 (2016). And this year, in *Beckles v. United States*, the Court held that the residual clause in the Career Offender Guideline, U.S.S.G. § 4B1.2(a)(2), which is "identically worded" to the residual clause in the ACCA that was invalidated in *Johnson*, is "not subject to vagueness challenges" because "advisory Guidelines do not fix the permissible range of sentences" but "merely guide the exercise of the court's discretion in choosing an appropriate sentence within the statutory range." 137 S. Ct. 886, 890 (2017).

The guideline at issue here is U.S.S.G. § 2K2.1, titled "Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition . . . ." According to the PSR, Salazar's base offense level was 24 under subsection (a)(2)—because he "committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense"—and he incurred a two level enhancement under subsection (b)(4)(A)—because "[i]f any firearm . . . was stolen, increase by 2 levels." U.S.S.G. §§ 2K2.1(a)(2), (b)(4)(A); *see also* PSR at 12. The "Definitions" section of the guideline states that "'[c]rime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." A cursory review of Salazar's criminal history in the PSR

reveals that he has multiple New Mexico felony convictions that may qualify as crimes of violence, including residential burglary, attempted aggravated burglary, conspiracy to commit first degree murder, and four convictions for battery on a peace officer. (*See* PSR at 15-20.)

Under the first prong of *Strickland*, the first task is determining the controlling law when Salazar was sentenced, because counsel does not render deficient performance for failing to forecast changes in law. *Bullock v. Carver*, 297 F.3d 1036, 1052 (10th Cir. 2002) ("[W]e have rejected ineffective assistance claims where a defendant faults his former counsel not for failing to find existing law, but for failing to predict future law and have warned that clairvoyance is not a required attribute of effective representation") (internal quotation and citation omitted).

Though Salazar's argument is now foreclosed by *Beckles*—because advisory guidelines are no longer amenable to vagueness challenges—he was sentenced on November 24, 2015—five months after *Johnson* was decided, during a time when Tenth Circuit law interpreting *Johnson*'s applicability to the guidelines was rapidly evolving. Broadly stated, Salazar's argument is that he would have proceeded differently had his trial counsel applied the most recent Tenth Circuit precedent and told him that his guideline range was too high because it was based on an enhancement from an invalidated guideline.

I state his argument broadly because his briefing does not cite a relevant case, though at least one exists—*United States v. Madrid*, 805 F.3d 1204 (10th Cir. 2015)—decided November 2, 2015, about three weeks before Salazar's sentencing. *Id.* There, the Tenth Circuit considered whether the defendant's Texas conviction for aggravated sexual assault of a child constituted a crime of violence under U.S.S.G. § 4B1.1 to permit sentence enhancement. *Id.* at 1206-07. The court noted that the guideline contained three clauses—the elements clause, enumerated offense clause, and residual clause—and stated that "[t]o uphold Madrid's sentence, his . . .

conviction . . . must fit into one of the three Guidelines categories that make the prohibited conduct a crime of violence." *Id.* The court noted that the conviction did not fit into either the elements clause or enumerated offense clause, and then applied *Johnson* to conclude that the residual clause was unconstitutionally vague. *Id.* Salazar's argument, liberally construed and more precisely stated, is that *Madrid* invalidated the residual clause of U.S.S.G. § 2K2.1(a)(2), which meant counsel was ineffective for failing to argue that Salazar no longer had two prior felonies that qualified as crimes of violence to enable sentence enhancement under that guideline. (*See* Doc. 4 at 4-10.)

Salazar does not address whether any of his prior felony convictions constitute crimes of violence under the elements or enumerated offense clauses, and the answer could end the inquiry. But his argument fails at an earlier analytical step, because, at the time of his sentencing, *Madrid* was not directly on point. First, it involved a different predicate offense—Texas aggravated assault of a child, instead of, for instance, New Mexico battery on a peace officer, for which Salazar had four prior convictions. Second—and again considering New Mexico battery on a peace officer—controlling law in the Tenth Circuit was that a conviction constituted a crime of violence under the career offender guideline. *See United States v Ortega*, 209 F. App'x 768, 770 (10th Cir. 2006) (rejecting defendant's argument that New Mexico battery on a peace officer, which was one of the three prior felony convictions used to enhance his sentence under the career offender guideline, was not a crime of violence.) Salazar's briefing does not point to a contradictory case, and the case he cites to support his argument—*United States v. Taylor*, 843 F.3d 1215 (10th Cir. 2016)—was decided a year after his sentencing and does not appear to be relevant. (*See* Doc. 4 at 6.)

Salazar is therefore unable to demonstrate deficient performance under *Bullock* because *Madrid* was not directly on point, and controlling law at the time of his sentencing was that New Mexico battery on a peace officer—for which Salazar had the requisite two prior convictions under U.S.S.G. § 2K2.1—constituted a crime of violence. Though counsel could have made a novel legal argument, he was not constitutionally ineffective for failing to do so.

Even assuming counsel should have raised an argument under either *Madrid* or a similar Tenth Circuit case, Salazar's first claim also fails under the second prejudice prong of *Strickland*. It seems highly unlikely that a recalculated sentencing range would have caused him to proceed to trial given the favorable plea bargain presented by the United States. Defense counsel summarized the bargain this way at the sentencing hearing: "So whatever the Sentencing Guideline range turned out to be as a result of the counts of conviction, 30 years would have been added to that. That is what the government forewent in return for Mr. Salazar's pleading guilty." (CR Doc. 358 at 6.) In addition, the United States previously obtained a conviction of Salazar's co-defendant, which further suggests there is a low probability that Salazar would have proceeded to trial given that the United States had a viable case.

If the favorable plea bargain and the conviction of his co-defendant are not enough to demonstrate that Salazar would not have rationally proceeded to trial, Salazar's defense counsel pointed out another palpable concern—the Court would likely impose the maximum sentence upon conviction based on Salazar's prior behavior. (*See* Doc. 13-2 at 1.) This concern was so pronounced that counsel thought the Court might reject the agreed-upon sentence in the plea agreement. (*See id.*) Counsel explained his concern this way in his declaration:

> [I]t was that history [of mental health issues and drug use], his history of dangerousness, and his tirade in court before the sentencing District Judge [during the Motions Hearing (*see* CR Doc. 221 at 125-126)], that caused me great worry that the District Court would not impose the parties' agreed upon-sentence. I was

> worried the District Judge would sentence Mr. Salazar to life imprisonment to ensure the safety of the community . . . As I had feared, the sentencing District Judge indicated during the sentencing hearing that given all that had transpired in the case, if Mr. Salazar had gone to trial the sentence would have been life imprisonment.

(*Id.*)

Statements from both Salazar and the Court during sentencing also reveal that the plea agreement was very favorable, which further suggests that Salazar would not have proceeded to trial, even with an adjusted sentencing range. Specifically, Salazar stated:

> I'd like to thank [the Assistant United States Attorney] for giving me the opportunity to still get out. 20 years is a long time. I'll get out when I'm about 59 years old, full term. But at least I could still drive my grandchildren, if my daughter decides to have a family, to school, pick them up, make them lunch, make them dinner, spend time with my family.

(CR Doc. 358 at 14.) The Court also noted that defense counsel obtained a favorable plea agreement, and even commented on the merits of a future ineffective assistance of counsel claim and defense counsel's performance:

> [L]et me just add to the record that we're making that, if there's ever any sort of an ineffective assistance claim made, you've got to prove prejudice to your case, that, you know, things would have gone better. If -- knowing what I know and if we had gone through trial and you had been convicted, I'd have maxed you out. I mean, whatever it was, I'd have maxed you out. And if that was a life sentence, that's what you would have gotten. So he did you a good job. [The Assistant United States Attorney] has acknowledged that already. And you have, for that matter. And he done you good work.

(*Id.* at 21-22.)

Taken together, the uncharged offense with a mandatory minimum sentence of thirty years imprisonment, the conviction of his co-defendant for the same charge, and the well-founded concern that the Court would impose the maximum sentence upon conviction at trial reveal that it would not be rational for Salazar to proceed to trial under the circumstances, even if his calculated guidelines range was lower. In fact, one could argue that a defendant facing a

lower sentencing range in this circumstance would be even more inclined to plead guilty because the difference between the lowered plea bargain sentence and post-trial sentence are even more disparate.

Salazar's second ineffective assistance claim is that the pistol he possessed as a felon was not stolen, and that defense counsel was ineffective for failing to challenge the resulting two-level increase under U.S.S.G. § 2K2.1(b)(4)(A) in the PSR. (*See* Doc. 3 at 5; *see also* Doc. 4 at 10-11.) Defense counsel's alleged inaction appears to be failing to obtain "the Discovery Document," which is presumably a computerized database report that would reveal the pistol was not stolen. (*Id.*; *see also* PSR at 12.)

The sentencing hearing transcript, however, reveals that both parties discussed Salazar's contention that the pistol was not stolen. Defense counsel stated: "Your Honor, in paragraph 23 [of the PSR], Mr. Salazar contends . . . that the firearm at issue in that paragraph . . . was not stolen, for what it's worth. The contention is that it was." (*Id.*) The Assistant United States Attorney later responded: "I don't think the facts underlying the PSR are incorrect. You know, whether or not the gun was stolen -- you know, whether or not Mr. Salazar stole the gun is really kind of immaterial. The bottom line is it was reported stolen out of Oklahoma." (*Id.* at 7.)

Salazar does not state that he would have proceeded to trial absent this alleged mistake, only that "this [ineffective assistance of counsel] caused the Petitioner to face a greater than necessary Guideline Sentencing Range which prejudiced the Petitioner in depriving him of his liberty for a greater time that would have been absent this error" [sic]. (Doc. 4 at 11.)

Liberal construction does not save Salazar's argument because he is unable to demonstrate prejudice under the second prong of *Strickland*. Even if he is correct, and the PSR incorrectly added an additional two points for possessing a stolen firearm as a felon, proceeding

10

to trial would not be rational for the same reasons noted above—i.e., he would face an additional charge with a thirty year mandatory minimum sentence, the United States already obtained a conviction of his co-defendant, and the Court would likely impose the maximum sentence upon conviction.

Salazar's third claim is that "Counsel was ineffective for failing to raise the issue of Petitioner's Mental Health and Drug Dependency during the Sentencing Phase of Trial" [sic]. (Doc. 3 at 6.) Salazar argues that he has a documented history of mental health issues, and that the government knowingly used a confidential informant to sell him heroin during the investigation of the case, as well as entrap him in later crimes. (*See id.* at 6-7; Doc. 4 at 12.) He argues that, had counsel raised these issues, "there is a more than reasonable probability that the sentencing would have considered these factors and the Petitioner would have received a lesser sentence" [sic]. (Doc. 4 at 12.)

This claim fails under both *Strickland* prongs because Salazar pled guilty pursuant to a plea agreement—which undermines his claim that the Court could have lowered his sentence—and the Court determined that he was competent to understand the plea agreement he entered into—which undermines his claim that his counsel failed to discuss competency.

Regarding competency, the Court's discussion with Salazar during the plea hearing is most relevant. (*See* CR Doc. 357.) The Court discussed the mental competency report from "the Federal Medical Center at Butner[, North Carolina]" and told Salazar that it "indicates that in the expert opinion of those that were doing the evaluation . . . you are competent to stand trial." (*Id.* at 3.) The Court also asked Salazar "do you believe that you have . . . the requisite state of mind that you could work with [defense counsel] effectively . . . to come to . . . this result of actually anticipating entering a plea of guilty?" (*Id.* at 5-6.) Salazar replied "Yes . . . ." (*Id.* at 6.)

11

The Court also noted that "one of the other tests is whether you understand the respective roles of everyone involved, the prosecutor, your counsel, the judge, and jury." (*Id.*) The Court stated: "I don't have any doubt, having interacted with you now over a couple of years and having read the report, that you understand the process. Is that fair?" (*Id.*) Salazar replied: "Yes, sir, I do understand the process." (*Id.*) Both the competency report and the Court's discussion with Salazar indicate that the Court considered his competency, so counsel could not have been ineffective. Further, there was no prejudice in determining the sentence because Salazar pleaded guilty pursuant to a plea agreement with a stipulated term of incarceration.

## CONCLUSION

Salazar's § 2255 motion should be denied because all three ineffective assistance of counsel claims fail under *Strickland*. This Proposed Findings and Recommended Disposition addresses each claim individually, but an alternative resolution is also apparent—Salazar's claims fail collectively because he is unable to demonstrate prejudice given the very favorable plea agreement and circumstances surrounding his plea. It is very unlikely he would have proceeded to trial given that he would face an additional charge with a thirty-year mandatory minimum sentence, a co-defendant was convicted at trial of the same charge a few months prior, and his counsel had a well-founded concern that the Court would impose the maximum sentence upon conviction based on Salazar's prior erratic, violent behavior.

I recommend that Salazar's amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody be dismissed with prejudice. I further recommend that the Court deny a Certificate of Appealability. *See* 28 U.S.C. § 2253(c).

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

*/s/ William P. Lynch*
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.